**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **UNITED STATES OF AMERICA**<br><br> **v.**<br><br> **LINNELL SHELTON,**<br><br> **Defendant.** | **Case No. 25-CR-186 (RDM)** |

**UNITED STATES' MEMORANDUM IN OPPOSITION TO**
**DEFENDANT'S MOTION TO SUPPRESS TANGIBLE EVIDENCE**

The United States of America, by and through its undersigned counsel, respectfully submits this Memorandum in Opposition to Defendant's Motion to Suppress Tangible Evidence. For reasons that follow, this Court should deny the Defendant's motion.

**PRELIMINARY STATEMENT**

In his motion, the Defendant, Linnell Shelton, argues that the officer could not see the rear sights of a handgun in plain sight as he was "sitting on a sidewalk resting." ECF 13 at 1-2. The Defendant completely mischaracterizes what transpired leading up to the recovery of the firearm in this case.

Here, the initial responding officer observed the Defendant lying flat on his back on a sidewalk surrounded by a small crowd of people just blocks from the United States Capitol. When the officer approached and knelt next to the Defendant, he believed, based on his training and experience, that the Defendant was suffering from a drug overdose. He shook the Defendant's shoulder to rouse him. He called for additional officers and EMS, who ultimately needed three doses of Narcan to resuscitate the Defendant. As the officer attempted to medically assist the

Defendant, who was prone on the sidewalk, the officer observed the rear of the firearm protruding from the Defendant's waistband. The officer then seized the firearm.

Based on these facts, this Defendant's initial seizure was a reasonable exercise of the officer's community caretaking duties. The ensuing seizure of the firearm was lawful on two grounds. First, it too was a reasonable exercise of the officer's community caretaking duties. Second, the totality of circumstances established probable cause to arrest the Defendant at the time of the seizure.

## **Factual Background**

On June 21, 2025, at approximately 5:32 PM, while conducting a routine patrol of the area of the area of 1st Street NE and D Street NE in a fully marked United States Capitol Police ("USCP") Cruiser, USCP Officer Daniel Amendola, Badge #6617, observed a group of people standing around a person lying prone on the sidewalk. Officer Amendola approached and observed that the individual on the ground was a male subject, later identified by his driver's license as Linnell Lonnie Shelton (hereafter "the Defendant"), who appeared to be unconscious or asleep and had faint breathing. Based on Officer Amendola's training and experience, the Defendant appeared to be suffering from a potential narcotics overdose.

Officer Amendola requested the DC Fire Department to respond to the scene to treat the Defendant. Meanwhile, Officer Amendola attempted to render emergency aid to the Defendant. To do this, he knelt next to the Defendant and tried to rouse the Defendant by lightly shaking one of the Defendant's shoulders and held his ear near the Defendant's chest to evaluate his breathing. While doing so, Officer Amendola's eyes were directed down the Defendant's torso, towards his feet. As he looked in this direction, Officer Amendola observed the rear sights of a handgun protruding from the Defendant's waistband.

Once he saw the rear sights of the firearm, Officer Amendola disarmed the Defendant by removing the handgun, which was in a holster, from the Defendant's person. Additional United States Capitol Police officers responded and administered two doses of Narcan. Later, EMS personnel arrived and administered a third dose. The Defendant was eventually transported to Howard University Hospital for further treatment and evaluation.

The recovered firearm was a 9-millimeter caliber Taurus Model G2C, with Serial # TMT29290 with a fifteen-round magazine, loaded with twelve rounds of ammunition, plus one round loaded in the chamber of the firearm for a total of thirteen rounds. A check of the Defendant's criminal history revealed that he had been previously convicted of Voluntary Manslaughter, an offense punishable by more than one year of incarceration.

## ARGUMENT

The firearm, magazine, ammunition, and holster seized from the Defendant should not be suppressed. As a first step in the encounter, the Defendant's seizure – which occurred when Officer Amendola physically touched the Defendant – was lawful as a reasonable exercise of a police officer's community caretaking functions. The next step of the encounter – the seizure of the firearm and holster – was also lawful on two separate grounds. First, it too was a reasonable exercise of the officer's community caretaking functions. Second, the totality of circumstances gave rise to probable cause to arrest the Defendant for criminal conduct, and the firearm was properly seized incident to that arrest.

### A. Officer Amendola's Seizure of the Defendant was a Reasonable Exercise of His Community Caretaking Duties

The Fourth Amendment does not protect against all seizures; it only protects against those that are *unreasonable*. *United States v. Sharpe,* 470 U.S. 675, 682 (1985) (emphasis added). To the extent that the Defendant was seized when Officer Amendola knelt next to the unconscious

Defendant, who was laying in the middle of a sidewalk amidst a small crowd of people, and shook his shoulder to rouse him,[1] this seizure was not only reasonable, but was expected of the officer, who has "an obligation to protect the safety of members of the community." *United States v. Johnson*, 365 F. Supp. 3d 89, 100 (D.D.C. 2019). Indeed, Officer Amendola's brief seizure of the Defendant is squarely within the police's community-caretaking function. This exception to the Fourth Amendment probable cause requirement permits law enforcement to briefly detain individuals when articulable facts indicate the need to assure the safety of the public or individual. See *Cady v. Dombrowski*, 431 U.S. 433, 441 (1973).[2] *United States v. King*, 990 F2.d 1552, 1557 (10th Cir. 1993).

Though some circuits have limited the exception's application to searches of vehicles, the D.C. Circuit has specifically left that question open. *Corrigan v. District of Columbia*, 841 F.3d

---

[1] Physical touching of a person has been held to constitute a seizure. *Torres v. Madrid*, 141 S. Ct. 989, 998 (2021); *California v. Hodari D.*, 499 U.S. 621, 625 (1991). Due to the fluidity of the situation, it is not certain whether Officer Amendola shook the Defendant's shoulder before or after he saw the sights of the firearm protruding from the Defendant's pants. Therefore, for purposes of this motion, the facts assume that the touching occurred before Officer Amendola observed the firearm.

[2] In *Cady*, the defendant, an off-duty Chicago police officer, was driving in Wisconsin when he got into an accident that disabled the vehicle. *Id*. at 435. A passerby drove the defendant to a nearby town, and from there the defendant telephoned the local police. *Id*. at 436. When they arrived, the Wisconsin police noticed that the defendant appeared to be drunk. *Id*. Unable to find the defendant's service weapon on his person and believing that Chicago officers were required to keep their service weapons in their possession at all times, the Wisconsin police searched the defendant's vehicle on two occasions – one at the scene and another (including the trunk of the car) after the car had been towed to a privately owned garage; during the second search, the police found in the vehicle evidence of a murder that the defendant had committed. *Id*. at 436-37. In response to the defendant's Fourth-Amendment challenge to the searches, the Supreme Court held that the searches of the defendant's vehicle were constitutional. 431 U.S. at 448. The Court began by observing that "[l]ocal police officers, unlike federal officers, frequently investigate vehicle accidents in which there is no claim of criminal liability and engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Id*. at 441. In holding that the officers' searches of the vehicle were reasonable for community safety, the Court pointed to the vehicle's incapacitation, the defendant's inability to make arrangements to secure the vehicle – including any weapon inside – because he was drunk initially and subsequently fell into a coma, and the fact that a trunk search was standard procedure in that jurisdiction. *Id*. at 443, 447-48. The Court further held that, "[t]he fact that the protection of the public might, in the abstract, have been accomplished by 'less intrusive' means does not, by itself, render the search unreasonable." *Id*. at 447.

1022, 1034 (D.C. Cir. 2016) (collecting cases); *United States v. Johnson*, 365 F.Supp.3d 89, 99-100 (D.D.C. 2019) (observing that *Corrigan* left the question open). Meanwhile, courts have repeatedly found that officers are well within their caretaking functions when they briefly seize individuals whom they observe to be unconscious to check on their well-being. *United States v. Koger*, 152 Fed.Appx. 429, 430 (6th Cir. 2005) (officers permitted to approach vehicle occupied by driver who appeared to be asleep or unconscious); *United States v. Long*, 847 F.3d 916, 922 (7th Cir. 2017) (finding that officers acting within caretaking functions when they approached unconscious driver and opened the car door); *United States v. Purvis*, 663 F.Supp.3d 1233, 1249 (D.N.M. 2023) (initial seizure of individual and firearm were justified when officers found an individual unconscious in a vehicle, saw a firearm in plain view, and removed the individual from the vehicle to separate him from the firearm); *Vargas v. City of Philadelphia*, 783 F.3d 962, 972 (3d Cir. 2015) (officers responding to a chaotic scene acted within community caretaking function when they seized a child who was experiencing a medical emergency pending ambulance's arrival); *United States v. Collins*, 321 F.3d 691, 695 (8th Cir. 2003) (officers who were responding to a shooting and observed two individuals slumped in the vehicle acted reasonably when they leaned into vehicle to check their well-being).[3]

In *United States v. Johnson*, this Court found that the community caretaking function permitted officers to briefly stop individuals for safety reasons. In that case, officers responding to a shooting found a man lying in the street, in the process of getting up. *Id.* at 94. Once the man

---

[3] *See also United States v. Greene*, 567 F.Supp.3d 800, 804 (E.D. Ky. 2020), *aff'd*, No. 20-6316, 2021 WL 3199239 (6th Cir. July 29, 2021); *United States v. Mitchem*, 545 F.Supp.3d 374, 383 (S.D.W. Va. 2021) (providing aid to unconscious driver); *Contra Woods v. Village of Bellwood*, 502 F.Supp.3d 1297, 1308 (N.D. Ill. 2020) (officers acted unreasonably when they commanded unconscious man to exit vehicle and threatened to break windows).

was upright, officers observed the man holding his left elbow in a manner consistent with being shot in the arm. *Id.* Officers beckoned the man to come to them and asked whether he had been shot. *Id.* The man complied, and officers visually inspected the man. *Id.* Despite finding no sign of any wound, they continued their inquiry by tugging and lifting the man's arms, eventually revealing a firearm. *Id.* Though the Court ultimately found that the tugging and moving of the man's arms violated the Fourth Amendment, the Court noted:

> Based on the circumstances here, the Court thinks it was a reasonable exercise of the officers' community caretaking functions to briefly stop Johnson in a manner that amounted to a seizure under the Fourth Amendment...Officers arrived on the scene of a suspected drive-by shooting to find Johnson lying in the street. And after Johnson got to his feet, the officers observed him holding his left arm in a manner suggesting that he may have been shot. Under these circumstances, it was reasonable for the officers to approach Johnson and briefly question him to ensure that he was not injured, even if Johnson himself did not want to talk. It likely would have been irresponsible, actually, for the officers to ignore the situation, as they had an obligation to protect the safety of members of the community. Because the officers' initial stop was reasonably aimed at ensuring Johnson's safety—a goal "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute," *Cady*, 413 U.S. at 441—the brief seizure falls squarely within the community caretaking exception.

*Id.* at 100 (citations omitted). Like the officers in *Johnson,* Officer Amendola's initial actions – kneeling next to the prone Defendant, listening to his breathing, shaking his shoulder – were all reasonable actions consistent with ensuring the Defendant's safety and determining the scope of the medical emergency from which he appeared to be – and was – suffering. Officer Amendola's failure to do anything less would arguably have been irresponsible and a breach of the officer's duty to protect the public. *United States v. Harris*, 747 F.3d 1013, 1017–18 (8th Cir. 2014) ("When police must make a split-second decision in the face of an emergency to either stand idly by, permitting a dangerous situation to continue uninterrupted, or act, addressing the potential danger to protect the public, we have reasoned that officers are expected to act."). Therefore, Officer Amendola's seizure of the Defendant was reasonable.

### B. The Ensuing Seizure of the Firearm was Lawful

Once Officer Amendola observed the rear sights of the firearm protruding from the Defendant's waistband during this process, he was permitted to remove the firearm for two equally valid reasons. First, the seizure of the firearm was a further reasonable exercise of Officer Amendola's community caretaking duties. Second, the Defendant's possession of the firearm, combined with his obvious impairment, created probable cause to arrest the Defendant for criminal conduct and to search him incident to that arrest.[4]

### 1. The Seizure of the Firearm was a Reasonable Exercise of Officer Amendola's Community Caretaking Duties

The seizure of the firearm was also a reasonable exercise of Officer Amendola's community caretaking duties, regardless of whether he knew at that time if the Defendant was legally permitted to carry a weapon, because "a legally possessed weapon presents just as great a danger to [his] safety as an illegal one." *Florida v. J.L.*, 529 U.S. 266, 272 (2000) ("Firearms are dangerous, and extraordinary dangers sometimes justify unusual precautions."); *United States v.*

---

[4] Since the firearm was found on the Defendant's person, the Government submits that the reasonable articulable suspicion and probable cause requirements for warrantless searches and seizures of individuals is most applicable. But the Government would also note that the plain view exception to the Fourth Amendment may also apply to these facts. There are three factors under the exception: (1) the officer did not violate the Fourth Amendment in arriving at the place from which the object is viewed; (2) the firearm's incriminating character was immediately apparent; and (3) the officer had a lawful right of access to the object seized. *Coolidge v. New Hampshire,* 403 U.S. 443, 465 (1971); *California v. Horton*, 496 U.S. 128 (1990). The first and third factors do not appear to be at issue in this case. As to the second factor, the incriminating nature of an item is immediately apparent if the officer has probable cause to believe that the item is either evidence of a crime or contraband. *United States v. Pindell*, 336 F.3d 1049, 1055 (D.C. Cir. 2003); *United States v. Rodriguez*, 601 F.3d 402, 407 (5th Cir. 2010). Indeed, the officer need not know or have an unduly high degree of certainty as to the incriminating character of the evidence under the plain view doctrine. *Pindell*, 336 F.3d at 1055. (cleaned up). All that is required is a "practical, nontechnical probability that incriminating evidence is involved." *Id.* (quoting *United States v. Castorena*, 285 F.3d 916, 924 (10th Cir. 2002). When Officer Amendola believed, based on his training and experience, that the Defendant was impaired by drugs, and observed in plain view the rear of the firearm protruding from the Defendant's pants, there was probable cause to believe that the firearm was evidence of the crime of Carrying a Firearm While Impaired, discussed *infra*. He was therefore permitted to seize the firearm.

*King*, 990 F.2d 1552, 1561 (10th Cir. 1993); *Purvis*, 663 F.Supp.3d at 1250 (finding that seizure of firearm was lawful for officer's safety).

In an analogous situation, in *United States v. Harris*, officers were called to a bus station for a report of a man who had fallen asleep on a bench with a handgun falling out of his pants pocket and observed the man asleep with the handgun sliding out of a pants pocket with the handle and back portion of the slide exposed. 747 F.3d 1013, 1015 (8th Cir. 2014). The officers took the precautions of removing the handgun, waking the man, and placing him in handcuffs. *Id.* The Court upheld the officers' actions, including the removal of the firearm, under the community caretaking function, observing that "any number of dangerous or even deadly outcomes could have resulted had officers permitted the situation to continue uninterrupted." *Id.* at 1018. Indeed, the governmental interest vindicating the officers' actions was encompassed by their obligation to "ensure the safety of the public and/or the individual, regardless of any suspected criminal activity." *Id.* (citations omitted).

Here, Officer Amendola was confronted with a similarly volatile situation. Whereas the individual in *Harris* was believed to only have been sleeping; here, Officer Amendola thought the Defendant was under the influence of narcotics. If the Defendant regained consciousness, there is no telling how he would have reacted to a police officer leaning over him or to the passersby who had gathered around the Defendant. As in *Harris,* removing the firearm was the reasonable course of action that ensured not only the officer's safety, but that of the people in the area, and the Defendant himself. Suppressing the evidence found under these circumstances would be a patently absurd result detached from the underlying rationale for the community caretaker exception. Therefore, the motion to suppress should be denied on this basis.

**2. Officer Amendola had Probable Cause to Arrest the Defendant and Seize the Defendant Incident to that Arrest**

Second, the facts presented to Officer Amendola gave rise to reasonable articulable suspicion, that immediately ripened into probable cause, to believe that the Defendant committed a criminal offense – namely, Carrying a Pistol While Impaired, in violation of D.C. Code § 7-2509.06(b).[5] Officer Amendola was therefore permitted to search the Defendant incident to this arrest and seize the firearm.

The police may make a brief investigative detention of a person based upon articulable suspicion. *Terry v. Ohio*, 392 U.S. 1 (1968); *see United States v. Nurse*, 916 F.2d 20 (D.C. Cir. 1990); *Cantizano v. United States*, 614 A.2d 870 (D.C. 1992). Reasonable articulable suspicion is substantially less than probable cause, but more than a mere hunch or general suspicion, and is based on the totality of the circumstances. *United States v. Sokolow*, 490 U.S. 1 (1989) (some minimal level of objective justification).

"Circumstances arising during the course of a lawful stop may cause reasonable suspicion to ripen into probable cause, allowing officers to make a warrantless arrest." *United States v. Abass,* 2025 WL 3141001 at *7 (D.D.C. Nov. 10, 2025) (citing *United States v. Stubblefield*, 932 F.Supp.2d 118, 119 (D.D.C. 2013)). "Probable cause exists if a reasonable and prudent police officer would conclude from the totality of the circumstances that a crime has been or is being committed." *United States v. Holder*, 990 F.3d 1327, 1328 (D.C. Cir. 1993). "In assessing probable cause, as the Supreme Court has declared, '"the evidence . . . collected must be seen and weighed not in terms of analysis by scholars, but as understood by those versed in the field of law enforcement."' *United States v. Laws*, 808 F.2d 92, 103 (D.C. Cir. 1986) (quoting *Illinois v. Gates*,

---

[5] The statute states that "[n]o person shall carry a pistol while impaired." "For the purposes of this section, the term "impaired" means a person has consumed alcohol or other drug or drugs and that it has affected [the] person's behavior in a way that can be perceived or noticed." D.C. Code § 7-2509.06(e).

462 U.S. 213, 233 (1983) (quoting in turn *United States v. Cortez*, 449 U.S. 411, 418 (1981))). The probable cause standard is an objective standard that is not restricted to the officer's subjective mindset or the offense cited at the time of arrest or booking. *District of Columbia v. Wesby*, 583 U.S. 48, 55 (2018); *See Devenpeck v. Alford*, 543 U.S. 146, 153 (2004)("[An arresting officer's] subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause.").

The totality of the circumstances in this case show that reasonable articulable suspicion immediately ripened into probable cause to arrest and search. Officer Amendola observed a small crowd of people gathered around the Defendant, who was laying prone on the ground at 5:30 in the evening on a public street near the United States Capitol. Contrary to the Defendant's claims, he was not sitting up resting. ECF 13 at 1-2. Crowds do not gather around people who are merely resting. But crowds do coalesce around people suffering from medical emergencies. Officer Amendola approached and saw the defendant unconscious and breathing faintly. He believed, based on his training and experience, that the Defendant was suffering a drug overdose. He knelt next to the Defendant to check his breathing and try to rouse him by shaking his shoulder. This physical touching, which was totally divorced from any criminal investigative tactics, was part of his efforts to provide medical aid. As Officer Amendola held his ear close to the Defendant's chest, he saw the gun protruding from his waistband. The totality of circumstances– specifically the perceived drug impairment combined with the presence of a weapon on the Defendant's person - gave rise to probable cause to believe that the criminal offense of Carrying a Pistol While Impaired, in violation of D.C. Code § 7-2509.06(b), was being committed. That the Defendant was not charged with this offense is not relevant to the probable cause determination.[6] *Wesby*, 583 U.S. at

---

[6] While the defendant could have been charged with a multitude of firearms offenses under the D.C. Code, he was ultimately charged with a federal firearms offense after law enforcement confirmed his prior felony

55. All that matters is whether the facts met an objective standard that a reasonable and prudent police officer would conclude from the totality of the circumstances that a crime has been or is being committed. *Holder*, 990 F.3d at 1327. That standard has been met in this case.

Once probable cause to arrest was established, Officer Amendola was permitted to search the suspect and the area under the suspect's control incident to that arrest. *Chimel v. California*, 395 U.S. 752, 763 (1969); *United States v. Holmes*, 385 F.3d 786 (D.C. Cir. 2004); *Wesley v. United States*, 293 F.3d 541 (D.C. Cir. 2002). The search itself need not precisely coincide with the timing of the arrest and may precede the time of the formal arrest. *United States v. Edwards*, 415 U.S. 800 (1974); *Rawlings v. Kentucky*, 448 U.S. 98, 111 (1980). Consequently, Officer Amendola's search was lawful, and the Court should deny the motion to suppress on this ground as well.

---

conviction for Voluntary Manslaughter.

## **CONCLUSION**

The Defendant's motion to suppress mischaracterized the facts to obscure the conclusion that the seizure of the Defendant and the firearm were lawful. The officer came upon what he believed to be a man experiencing a medical emergency – a drug overdose. Under the community caretaking exception to the Fourth Amendment, Officer Amendola acted reasonably when he seized the Defendant by shaking his shoulder. The ensuing seizure of the firearm was also lawful on two grounds. First, it too was a reasonable exercise of the officer's community caretaking obligations. Second, there was probable cause to believe that the Defendant committed a criminal offense. For these reasons, the Defendant's motion to suppress should be denied.

Respectfully submitted,
Jeanine Ferris Pirro
United States Attorney

By:                                 */s/ Travis Wolf*         
                                      TRAVIS WOLF
Assistant United States Attorney
N.Y. Bar No. 5483243
United States Attorney's Office
601 D Street NW
Washington, DC 20530
(202) 803-1670
Travis.Wolf@usdoj.gov